## Flucker, Appellant, *v.* Carnegie Steel Company.

*Workmen's compensation—Duties of referee—Findings of fact —Act of June 2, 1915, P. L. 736—Suicide—Circumstantial evidence—Burden of proof—Course of employment—Presumption.*

1. In a proceeding under the Workmen's Compensation Act, the referee should make his findings of fact so comprehensive and explicit as to disclose the full story of the accident, but as those charged with the grave responsibility of finding the facts are not required to be learned in the law, and, in many cases, lack the assistance of trained practitioners, the same precision in their adjudications as otherwise might be looked for, expected, and required, can not be insisted upon.

2. The act contemplates brevity and simplicity in all matters of practice, but if a referee entirely fails to pass upon any material matter of fact, covered by the evidence, which either side con-

siders, in event of an appeal to the courts, may be vital to its case, those affected should apply to the compensation board for assistance in that respect, on a hearing de novo.

3. In proceedings under the Workmen's Compensation Act the burden of proving suicide is upon the employer.

4. In such proceedings a referee's findings of fact may be based on circumstantial evidence.

5. An ultimate conclusion upon which an award rests that "deceased met his death from injuries received by accident occurring in the course of his employment," is in a measure a mixed question of fact and law. As the compensation act undertakes to define the meaning of the phrase "injury by an accident in the course of his employment," in each instance the question of law is presented as to whether or not the underlying findings of fact are sufficient to bring the case within the statutory definition; but this, however, does not warrant any interference by the courts with such findings of fact whether they be based on proved facts or inference therefrom.

6. Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment.

7. The burden is upon a claimant to prove his case, and the tribunal charged with the duty of finding the facts must weigh and consider all attending circumstances, in order to determine how far they should prevail against presumptions arising out of other facts favoring the claimant; but when this course has been pursued, a controlling finding that an employee was killed in a particular manner, reasonably indicated by the circumstances shown in the underlying findings, cannot properly be held to be without support upon the record, and cannot be reversed by the Court of Common Pleas.

8. Where the adjudication of the referee contains underlying findings of fact, which either negative or fail to support his ultimate, or controlling findings, an error of law is presented, which may be reviewed on appeal.

Argued Oct. 14, 1918. Appeal, No. 65, Oct. T., 1918, by plaintiff, from order of C. P. Allegheny Co., Jan. T.,

1918, No. 1007, reversing decision of Workmen's Compensation Board in case of Mary A. Flucker v. Carnegie Steel Company.   Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING, SIMPSON and FOX, JJ.   Reversed.

Appeal from award of Workmen's Compensation Board.   Before CARPENTER, J.

*Error assigned* was order reversing the award.

*H. J. Nesbit,* with him *A. H. Mercer,* for appellant, cited: McCauley v. Imperial Woolen Co., 261 Pa. 312; Cartin v. Standard Tin Plate Co., 263 Pa. 56.

*John G. Frazer,* with him *Reed, Smith, Shaw & Beal,* for appellee.—We have been unable to find a decision in any state which holds that the question as to whether an accident occurred in the course of employment is one of fact.   On the other hand, the rule that the question is a mixed question of law and fact and reviewable by the courts, is well established:  Foley v. Home Rubber Co., 89 N. J. Law 474; Smith v. Corson, 87 N. J. Law 118; Schmoll v. Weisbrod & Hess Brewing Co., 89 N. J. Law 150; Bryant v. Fissell, 84 N. J. Law 72.

A conclusion of law, although made in the form of a finding of fact, may be reviewed: Smith v. Industrial Accident Commission, 26 Cal. App. Court 560.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4, 1919:

Henry Flucker, a man in good health, fifty-five years of age, was employed in the Carnegie Steel Company's Pittsburgh plant; at the time of the accident, he was working on night turn, beginning his daily service at six o'clock p. m. and quitting at six a. m.; it was his duty to look after two pumping stations, 350 feet apart, one being on what is known as the "Carnegie side" and

the other across a small ravine, about eighteen feet deep and twenty feet wide; to enable defendant's employees to go from one side of this ravine to the other, it is spanned by a footbridge, "about thirty-six or forty" inches wide, with a railing at either side three feet in height; a railway trestle is likewise constructed over the opening, below the footbridge, and this also could be used by pedestrians as a crossway; plaintiff's husband, in the performance of his duties, was required to remain at the pumping station on the Carnegie side the greater part of the time, but, about every three hours, he would have to go to the opposite station; on the evening of February 11, 1917, Flucker reported at the Carnegie station a little before six o'clock, and remained until about eight p. m., then he went to his home, stayed there until some time between ten and eleven o'clock, when he started back to his place of work; he had "drunk some" previous to reporting at the plant, but "was not under the influence of liquor when he arrived at work at six o'clock"; after leaving home to return to work, he was not again seen until the next day, when his dead body was found in the ravine, about eight feet below the footbridge, but above the railway trestle, with injuries on the trunk, hands and back of the head; the night in question was exceedingly cold and some snow and ice were on the trestle and ground, but the footbridge had been cleared of them the previous day.

The proceeding was under the Workmen's Compensation Act. After finding the foregoing material facts, and inferring therefrom that "the deceased fell into this sewer [or ravine] some time during the night, while attempting to cross either the footbridge or trestle," the referee concluded that "the deceased met his death from injuries received by accident occurring in the course of his employment with the defendant company"; and awarded compensation to his widow and children. An appeal was taken to the compensation board, which sustained the award; whereupon the case was removed

to the Common Pleas of Allegheny County, which tribunal reversed, deciding that the record presented no sufficient support for the referee's inference as to the manner of the injury which befell the deceased, or for the conclusion that he met death while in the course of his employment. The claimant appealed to this court.

The compensation act, to realize the success which it deserves, must be administered, like any other system for adjusting rights between man and man, in a manner calculated to do, as nearly as humanly possible, exact justice to all concerned; and, as recently said by this court in Gurski v. Susquehanna Coal Co., 262 Pa. 1, "the referee should make his findings of fact so comprehensive and explicit as to disclose the full story of the accident." Under this statute, however, those charged with the grave responsibility of finding the facts are not required to be learned in the law, and, in many cases, they lack the assistance of trained practitioners; hence the same precision in their adjudications as otherwise might be looked for, expected and required, can not be insisted upon.

The act contemplates brevity and simplicity in all matters of practice; but, if a referee entirely fails to pass upon any material matter of fact, covered by the evidence, which either side considers, in event of an appeal to the courts, may be vital to its case, those affected should apply to the compensation board for assistance in that respect, on a hearing de novo: see Section 421, Article IV, Act of June 2, 1915, P. L. 736, 753; McCauley v. Imperial Woolen Co., 261 Pa. 312.

The underlying findings in the present case, considering the circumstances, are reasonably full and explicit; and they by no means call for the conclusion, reached by the court below, that claimant's husband had abandoned his work for the night when he went to his house. On the contrary, the express finding of the referee is that Flucker subsequently "left his home to go back to his place of work"; and other findings upon the record sug-

gest that, considering the hour of departure from his residence, he must have reached defendant's plant in ample time to resume his usual occupation during his regular working hours.

There is an indication upon the record that suicide was suggested before the referee as a possible defense; but Article III, Section 301, of the act (P. L. 738), expressly provides the "burden of proof of ["intentionally self-inflicted" death] shall be upon the employer"; and no finding here supports any such theory. Under the circumstances of this case, as disclosed by the record before us, the conclusion of fact as to the manner of Flucker's death was for the compensation authorities to draw, and, when made by the referee and affirmed by the board, it was not subject to reversal by the court below: Poluskiewicz v. Philadelphia & R. C. & I. Co., 257 Pa. 305.

We may add that, while the present conclusion, as to the manner of death, rests upon circumstantial evidence, there having been no eye-witness to the actual occurrence, yet this is by no means unusual. As recently stated by us in Weinschenk v. Philadelphia Homemade Bread Co., 258 Pa. 98, "There was no eye-witness to the accident, but that situation is present in many cases where verdicts for the plaintiff have been affirmed, among others: Philadelphia & R. R. R. Co. v. Huber, 128 Pa. 63; Henderson v. Continental Ref. Co., 219 Pa. 384; Millum v. Lehigh, Etc., Coal Co., 225 Pa. 214; Tucker v. Pittsburgh, Cin., C. & St. L. Ry. Co., 227 Pa. 66; McManamon v. Hanover Twp., 232 Pa. 439; Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Dannals v. Sylvania Twp., 255 Pa. 156."

As to the ultimate conclusion, upon which the award rests, that "deceased met his death from injuries received by accident occurring in the course of his employment with the defendant company," it is contended by appellant that this presents a mixed question of fact and law, which may be reviewed on its latter aspect. In

a measure, the contention is sound, for since the compensation act undertakes to define the meaning of the phrase "injury by an accident in the course of his employment" (see Section 301, Article III, P. L. 738-9), in each instance the question of law is presented as to whether or not the underlying findings of fact are sufficient to bring the case within the statutory definition; but this, however, does not warrant any interference by the courts with those findings, whether they be based on proved facts· or inferences therefrom: Poluskiewicz v. Philadelphia & R. C. & I. Co., supra.

Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment; such is the case at bar.

Of course, the burden is always upon a claimant to prove his case, and the tribunal charged with the duty of finding the facts must weigh and consider all attending circumstances, in order to determine how far they ·should prevail against presumptions arising out of other facts favoring the claimant; but when this course has been pursued, a controlling finding that an employee was killed in a particular manner, reasonably indicated by the circumstances shown in the underlying findings, cannot properly be held to be without support upon the record.

Where, however, the adjudication of the referee contains underlying findings of fact which either negative or fail to support his ultimate, or controlling, findings, an error of law is presented, which may be reviewed on

appeal. For instance, suppose, in the case at bar, the referee had found that deceased left defendant's plant, against the latter's protest, and that his dead body had subsequently been discovered, not on the premises of his employer, but in the yard of his own home; on such underlying findings, the conclusion now complained of could and would be reversed, for the record itself would demonstrate its utter lack of essential support.

Here, however, so far as the subordinate findings are concerned, there is nothing to convict either the referee or the compensation board of an abuse of the power vested in them by the Act of June 2, 1915, P. L. 736, to deal with issues of fact; and the court below erred in holding as a matter of law that the record presents no sufficient support for the controlling findings or conclusions on which the award rests.

The judgment of the common pleas is reversed and the order entered by the referee, and approved by the compensation board, is affirmed.