## Berry v. Drexel Institute of Technology et al.

*Charles D. Smeltzer* and *David L. Ullman*, for plaintiff.

*Frank R. Ambler*, for defendants.

LEVINTHAL, J., November 5, 1943. — Decedent's widow filed a claim petition on October 29, 1938, to recover compensation for the death of her husband. More than five years have elapsed since that date. Claimant has since died, and a final determination of the issues herein involved is still in futuro. Justice, which is frequently depicted as unseeing, in this case seems to have been halt.

This is the second time this case has come before us on appeal from the Workmen's Compensation Board. We previously reviewed the record in an opinion handed down by us on July 17, 1940. At that time we expressed our opinion that "we do not see how the evidence admits of any conclusion other than that decedent suffered an accidental injury in the course of his employment, and the board should have so found". We also expressed the opinion that a finding ought to be made with respect to the causal connection between the accident and the death. We then remitted the record to the Workmen's Compensation Board for a further hearing in accordance with the law as stated in our opinion.

After the filing of the first opinion another hearing was held by the referee, who made the following findings of fact, inter alia:

"6. From the evidence, the referee finds as a fact that decedent, on October 15, 1938, was found in the hallway of the premises of defendant in a state of collapse due to his heart condition.

"7. That there is no causal relationship between the occurrence or collapse of October 15, 1938, and decedent's death. That decedent sustained no accident on October 15, 1938, which precipitated or aggravated his heart attack.

"8. That decedent died on October 29, 1938, the cause of the death being fracture of the pelvis, myocardial fibrosis, coronary sclerosis.

"9. That the fracture of the pelvis was caused when decedent fell after suffering the heart attack, but the fracture of the pelvis was in no way related to, or caused the death of the decedent on October 29, 1938."

Upon the basis of these findings, the referee disallowed compensation and dismissed the claim petition. On appeal to the Workmen's Compensation Board, the findings of fact and conclusions of law of the referee were affirmed, with the following modifications of the referee's sixth and ninth findings of fact:

"Sixth: That decedent, on October 15, 1938, was found in the hallway of the premises of defendant in a state of collapse.

"Ninth: That decedent sustained a fracture of the pelvis. The manner in which said fracture was sustained is not explained. However, the fracture of the pelvis was in no way related to or caused the death of decedent."

We find it necessary at this time to reiterate our opinion that the evidence reasonably supports but one conclusion: decedent fractured his pelvis as the result of a fall while on his master's premises in the course of his employment, and even if such fall were precipitated by a heart attack it was an accident within the meaning of The Workmen's Compensation Act: McCarthy v. General Electric Co., 293 Pa. 448 (1928). It is unnecessary to repeat the evidence on this branch of the case. It is reviewed in our former opinion filed on July 17, 1940. No additional evidence was presented at the second hearing which warrants a change

in the conclusion to be derived on the application of the relevant legal principles.

In affirming the referee the second time, the board said:

"The history was given to the doctor on the day after the alleged accident and, accordingly, cannot be deemed part of the res gestæ. . . .

"It has been held that it is not necessary that the fall result from an accident, as the fall is the accident. See McCarthy v. General Electric Co., 293 Pa. 448; Horn v. Fitler Company, 115 Pa. Superior Ct. 188. In both of the above cases, there was evidence, either direct or circumstantial, indicating that the employe fell. In the McCarthy case, no one saw the fall, but it was heard and the employe was immediately found, unconscious, with his face in a pool of blood. In the Horn case, the employe was found lying at the foot of a flight of steps and a fellow-employe testified that, upon finding the employe in such condition, the employe told him that he fell down the steps. In the case before us, there is no evidence tending to show that the decedent fell at or near the place where he was found. It may be that the decedent fell and injured himself off the defendant's premises, suffering his injury. Under these circumstances, we feel that the claimant failed to prove that the decedent fell upon the defendant's premises and consequently failed to establish an accident within the meaning of The Workmen's Compensation Act."

The suggestion in the board's opinion that decedent may have fallen and injured himself off defendant's premises in the first instance, and then have come upon the master's premises, represents a substitution of speculation for evidence. In view of the fact that decedent was found unconscious on the employer's premises, several hours after the commencement of the working day, in a state of shock, with a fractured pelvis, and had to be carried from the building to an automobile and from the automobile to his home, it seems ex-

tremely improbable that he had fallen elsewhere than where he was found lying unconscious.

Though decedent was not dead when found, the following language from Finnerty v. Hudson Coal Co., 113 Pa. Superior Ct. 317, 320 (1934), is particularly appropriate to this aspect of the case:

" 'Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment.' "

Moreover, there is more in this case than the physical circumstances giving rise to an inference that decedent fell while on his employer's premises. Dr. Robert E. Sterner, called as claimant's witness, testified that decedent gave a history of having fallen down the steps. In addition, Dr. Frederick W. Hayburn, called by defendant as a witness in the original hearing, testified that decedent gave him a history of the case when decedent was admitted to the Episcopal Hospital on October 15, 1938, and that the history begins as follows: "Patient states that he had a dizzy spell while at work and fell downstairs."

The board, in its opinion, ignores this testimony by Dr. Hayburn, and says of Dr. Sterner's testimony:

"The testimony of Dr. Sterner, as to the history given by decedent to the effect that he fell down the steps, is likewise hearsay and cannot be considered. The history was given to the doctor the day after the alleged accident and, accordingly, cannot be deemed part of the res gestæ."

Admittedly, the statement made by decedent the next day was not part of the res gestae under the circumstances of this case. It may well be, however, that Dr. Sterner's testimony as to the history given him by decedent may be admissible, at least in part, as an independent exception to the hearsay rule. See Lichtenwallner v. Laubach, 105 Pa. 366 (1884), and John v. Reick-McJunkin Dairy Co., 281 Pa. 543 (1924). We do not express an opinion on that score. As for Dr. Rayburn's testimony, however, he was defendant's witness. In such case, his testimony, though hearsay, is entitled to the same probative force as it would carry were it not hearsay: Poluski v. Glen Alden Coal Co., 286 Pa. 473 (1926). The physical circumstances of this accident, of themselves, impel the conclusion that decedent fell while on his master's premises. Our opinion in this respect is merely reinforced by the competent testimony of Dr. Rayburn. The board should have found, under all the evidence, that decedent had sustained an accidental injury in the course of his employment.

The question of the causal connection between the fractured pelvis and the death is a separate and independent issue. On behalf of claimant, five physicians, all men of unusually high standing in their profession, were of the unanimous opinion that the fractured pelvis was a substantial contributing cause of the death. The referee, however, based his finding of fact that no such causal connection existed on the testimony of one medical expert who testified on defendant's behalf that the fractured pelvis was not a contributing cause. This was affirmed on appeal to the board, and claimant's petition for the appointment of an impartial expert was denied. The refusal of the board to appoint an impartial medical expert is readily comprehensible in view of its finding that claimant had failed to establish an accident. As a matter of fact, the board explicitly gives this as the reason. However, in the light of the

fact we have expressly declared our opinion that but one conclusion is reasonably derivable from the evidence, that decedent did sustain an accidental injury in the course of his employment, the reason upon which the board predicated its refusal to appoint an impartial medical expert is nonexistent. Consequently, if the board has any doubts as to the causal connection between the accidental injury and the death, the opinion of an expert appointed by the board should be of great assistance to it. This is particularly true in this case, where, on the state of the record, the finding of fact that no such causal relationship exists cannot be sustained. This conclusion is based exclusively upon the testimony of Dr. Irvin Boykin, who testified that he did not believe the fractured pelvis contributed to the death. However, the doctor based his opinion, in part, upon the fact that "following his alleged injury, he was ambulatory for ten days". There is no evidence, however, that decedent was ambulatory after the accident. On the contrary, the evidence is explicit that decedent was confined either to a couch or to a chair, and did not walk around. An expert's opinion is competent only when it is based upon a factual premise. Since the premise on which Dr. Boykin expressed his opinion is not sustained by the evidence, it follows that no finding of fact may be predicated thereon. See Central Guarantee Trust & Safe Deposit Co. v. White, 206 Pa. 611 (1903).

We may also note in passing that the eighth and ninth findings of fact of the referee are inconsistent and contradictory with respect to the causal connection between the fractured pelvis and the death.

And now, November 5, 1943, claimant's appeal is sustained, and the record is remitted to the Workmen's Compensation Board for such action as it may deem advisable to take in the light of the legal principles expressed in this opinion.