## Altman v. Kaufmann Realty Co. et al.

Argued May 9, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank K. Willmann,* for appellants.—The burden is upon a claimant to prove that a deceased employee was injured while actually engaged in the furtherance of the business of the employer: Haddock v. Edgewater Steel Company, 263 Pa. 120; Messer v. Manufacturers Light & Heat Co., 263 Pa. 5; Krapf v. Arthur, 95 Pa. Superior Ct. 468.

*Mead J. Mulvihill,* for appellee, cited: Redman v. Sniedley, 276 Pa. 296; Chase v. Emery Mfg. Co., 271 Pa. 265.

OPINION BY STADTFELD, J., July 14, 1933:

This is a workmen's compensation case in which the defendants appeal from the judgment of the court of common pleas of Allegheny County entered upon an award of the Workmen's Compensation Board which affirmed the findings of fact, conclusions of law and award of compensation of the referee.

Jacob Altman, the husband of the claimant, died on September 1, 1930, as a result of an injury sustained by being struck by an automobile at about 8:30 A. M.. Saturday, August 30, 1930, at Fifth Avenue and Grant Street, while the deceased was alighting from a street car.

The deceased had been employed for about nineteen years by the defendant, The Kaufmann Realty Company, and apparently occupied the position of all-around man and assistant to Mr. R. M. Kaufmann the general manager of the defendant company.

The business of the defendant company was principally that of real estate.

The deceased had no fixed hours of employment and was subject to call by his employer at any hour of the day or night to perform special missions on behalf of the employer. On a number of previous occasions, the deceased had been called by his employer at early hours of the morning to look after special matters on behalf of his employer, and had also on many occasions been engaged in special work up to very late hours in the night.

Very early on the morning of August 30th, which was a Saturday, the employee was called by his employer over the telephone and instructed by his employer to take charge of certain alterations to a building owned by the employer at the corner of Fifth Avenue and Pride Streets, Pittsburgh, and to see that the necessary alterations were completed before the morning of September 2nd, in order that the building might be in a proper condition for occupancy by a physician who had leased the said premises and had been promised possession for said date. The intervening days between August 30th and September 2nd, were Sunday and Labor Day so that such work as had to be done would necessarily require immediate attention.

In addition to the instructions given over the telephone by the employer, the deceased was informed that his employer had left a memorandum on his desk of the alterations which he thought necessary, which memorandum the employee might get at the office of the employer.

The deceased was also advised by his employer that arrangements had been made for the deceased to meet a certain Mr. Piroth, the painter and carpenter who had been engaged by the employer to perform the work necessary to be done at the building at Fifth Avenue and Pride Street.

In immediate response to the said telephone instructions the deceased left his home at an hour much earlier than usual when he had no specific missions to perform.

There is no evidence as to any action of the deceased from the time he left his home until the time of his accident.

The board, inter alia, affirmed the fifth finding of fact of the referee, which finding is as follows: "The decedent had been employed by the defendant company for quite a long period of time, and while so employed had no regularly specified hours of employment—that is, he was subject to call at any time of the day or night; and was called at night by his employer on numerous occasions. On the morning of August 30, 1930, his employer was leaving town for an extended trip, and before leaving, or about seven o'clock, called the deceased to give him some instructions regarding work which was to be done during the next three days. The deceased left his home that morning at an earlier hour than was his usual custom, to look after this special work his employer had directed him to do. While alighting from a trolley car at Fifth Avenue and Grant Street, Pittsburgh, he was struck

by an automobile and suffered injuries from which he died on September 1, 1930.''

The board also affirmed the conclusion of law by the referee ''that the claimant's deceased husband died as a result of an injury by accident while in the course of his employment for the defendant and that she is accordingly entitled to recover compensation in accordance with the provisions of the Workmen's Compensation Act; . . . . . . ''

The court below in an opinion by PATTERSON, J., dismissed the exceptions to the findings and conclusions of the board and entered judgment on the award. From that award this appeal is taken by defendants.

The sole question raised by the assignments of error is whether the referee and the board erred in finding that the deceased was injured while in the course of his employment.

Article III, Section 301, of the Workmen's Compensation Act of June 2, 1915, P. L. 736, provides, that accidents sustained ''While the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employers' premises or elsewhere'' shall be included in the term ''injury by an accident in the course of his employment, as used in this article.''

Under the act a distinction is made between accidents on and off the employer's premises. In the present case there is no question but that the accident occurred off the premises. Therefore, the claimant was required to establish that the deceased was injured while furthering the business of his employer.

This distinction has been recognized in many cases, among others: Maguire v. James Lees and Son, 273 Pa. 85; Haddock v. Edgewater Steel Co., 263 Pa. 120; Messer v. Manufactures L. & H. Co., 263 Pa. 5; Krapf v. Arthur, 95 Pa. Superior Ct. 468.

This court is not a fact finding body, and our sole

duty is to ascertain whether there is sufficient legally competent evidence to sustain the findings of the board, and whether the law has been properly applied to such findings.

A careful examination of the evidence leads us to the conclusion that there is sufficient legally competent evidence to sustain the findings. The testimony of R. M. Kaufmann, general manager of defendant company, clearly indicates the special mission on which he directed claimant's deceased husband and that he apparently was engaged therein at the time he met with the accident resulting in his death. This distinction has been clearly recognized in the cases cited supra. See also Kelling v. Froeming Bros., 287 Pa. 471.

In the case of Flucker v. Carnegie Steel Co., 263 Pa. 113, the question was raised by the employer as to the competency of the testimony upon which the findings of the referee and the board were based. In a very comprehensive opinion written by Mr. Justice MOSCHZISKER that situation is fully discussed, and in disposing of the case and sustaining an award made by the referee the court said: "Of course, the burden is always upon a claimant to prove his case, and the tribunal charged with the duty of finding the facts must weigh and consider all attending circumstances, in order to determine how far they should prevail against presumptions arising out of other facts favoring the claimant; but when this course has been pursued, a controlling finding that an employee was killed in a particular manner, reasonably indicated by the circumstances shown in the underlying findings, cannot properly be held to be without support upon the record."

We have recently passed on a similar question in the case of Martin v. S. W. Ins. Fund et al., reported in 108 Pa. Superior Ct. 570, 165 A. 514.

We see no error in the disposition of this case by the court below. The assignments of error are overruled and judgment affirmed.